

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION



| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **ROBERT LEE WEBB, JR.** | § | |
| xxx-xx-3806 | § | Case No. 12-40350 |
| and **KATHERYN C. WEBB** | § | |
| xxx-xx-8926 | § | |
| | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| GLENBROOK OWNERS' | § | |
| ASSOCIATION, INC. | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 12-4081 |
| | § | |
| ROBERT LEE WEBB, JR. | § | |
| and KATHERYN C. WEBB | § | |
| | § | |
| Defendants | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]**

Upon trial of the complaint in the above-referenced adversary proceeding, the

Court issues the following findings of fact and conclusions of law pursuant to Fed. R.

Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R.

Bankr. P. 7052.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

## *FINDINGS OF FACT*

1.     The complaint objects to the entry of a discharge order in favor of the Debtor-Defendants, Robert Lee Webb, Jr. and Katheryn C. Webb (the "Debtors") under 11 U.S.C. §727(a)(2)(A) and §727(a)(4)(A), or, in the alternative, it seeks a determination of the dischargeability of the particular debt owing by the Debtor-Defendants to the Plaintiff, Glenbrook Owners' Association, Inc. ("Plaintiff" or "Glenbrook").

2.     The Plaintiff is a homeowners' association organized under the laws of the state of Texas[2] which governs the development of a neighborhood known as Glenbrook Estates.

3.     Glenbrook Estates is a residential community located in Lucas, Collin County, Texas.[3]

4.     The Debtors purchased a home located within the Glenbrook Estates, at 17 Glenbrook Circle, in 2004 (the "Glenbrook Circle property").

5.     As property owners within the Glenbrook Estates community, the Debtors' use of the Glenbrook Circle property was encumbered and governed by the Declaration of Covenants and Assessments for Glenbrook Estates (the "Glenbrook Declaration").[4]

6.     On or about February 11, 2006, the Debtors began construction and layout of an outbuilding on the Glenbrook Circle property.[5]

7.     The Debtors understood that, as property owners in Glenbrook Estates, they were required, prior to building any exterior improvements, to submit an application for

---

[2] Ex. 1-3.  Stipulated Fact #1.

[3] Stipulated Fact #2.

[4] Stipulated Fact #5.

[5] Stipulated Fact #3.  Earlier conflicts between the Plaintiff and the Debtors had occurred over the construction of an iron fence and the diligence of the Glenbrook board of directors regarding covenant enforcement.  Though such disputes may have soured the relationship between the parties and set the groundwork for later tensions, they were not the subject of the state court litigation or assessment of damages against the Debtors and, therefore, are not particularly germane to the resolution of the Plaintiff's complaint.

approval of the improvement which identified the location, nature, height, and materials of the improvement.[6]

8.      Debtor, Robert Webb, personally drafted all of the construction plans submitted to Glenbrook, including the construction plans for the outbuilding.[7]

9.      The location of the outbuilding by the Debtors was not in compliance with the Glenbrook Declaration or the building plan that had been earlier approved by the Glenbrook Board of Directors.[8]

10.     On February 17, 2006, counsel for Glenbrook sent the Debtors a letter demanding that they cease and desist from the construction of the outbuilding.[9] The Debtors refused to do so.

11.     In light of that refusal, Glenbrook sought and received an *ex parte* temporary restraining order, which enjoined the continued construction of the outbuilding, in a lawsuit styled *Glenbrook Owners' Association, Inc. v. Robert Webb and Kathy Webb*, pending before the 219th Judicial District Court in and for Collin County, Texas under cause no. 219-591-06 (the "State Court Litigation").[10]

12.     In the State Court Litigation, Glenbrook sought not only injunctive relief but also statutory damages under §202.004(c) of the Texas Property Code and the award of attorney's fees.[11]

13.     The petition in the State Court Litigation also sought a cessation of various nuisances allegedly committed by the Debtors in the neighborhood including:  (1) filming and photographing neighbors on the neighbors' property; (2) yelling curse words and participating in lewd and lascivious behavior in front of neighbors and the neighbors' families (including young children); (3) gesturing obscenely to

---

[6] Stipulated Fact #6.

[7] Stipulated Fact #8.  Ex. E.

[8] Stipulated Fact #7.

[9] Ex. 4.  Stipulated Fact #4.

[10] Ex. 19.

[11] Stipulated Fact #15.

neighbors; (4) placing animal feces on a neighbor's property; (5) placing a dead rodent on a neighbor's property; (6) driving vehicles on their property in an unsafe and annoying manner; and (7) playing loud and sometimes obscene music for extended periods of time.[12]

14.     Pending trial in the State Court Litigation, the parties subsequently agreed to the entry of an "Amended Agreed Temporary Injunction" which temporarily enjoined the Debtors from: (1)  continuing any construction on their property; (2)  engaging in any inappropriate, illegal, or harassing conduct in public; (3) photographing, videotaping or audiotaping other residents and other properties in the development; and (4) violating other restrictions contained in the Glenbrook Declaration.[13]

15.     The Debtors did not move the outbuilding between February 11, 2006 and April 7, 2006.[14]

16.     The outbuilding was moved by the Debtors on April 8, 2006, approximately ten (10) feet further away from the adjoining property line, and closer to Debtor's then residence.[15]

17.     The Debtors neither requested nor received approval from Glenbrook to move the outbuilding.[16]

18.     A full evidentiary trial before a jury was conducted in the State Court Litigation in May 2007, with consideration of all evidence in favor of the Plaintiff as well as the evidence supporting the defenses of the Debtors.

19.     On June 19, 2007, a "Final Judgment and Permanent Injunction" was issued by the 219th Judicial District Court (the "Initial State Court Judgment").[17]

20.     The Initial State Court Judgment commanded the Debtors to remove the

---

[12] Stipulated Fact #16.

[13]  Ex. 20.

[14] Stipulated Fact #11.

[15] Stipulated Fact #14.

[16] Stipulated Fact #9.

[17]  Ex. 21.

outbuilding.  It issued comprehensive injunctions against the Debtors to cease the offensive behavior cited in the petition.  It also awarded to Glenbrook and assessed against the Debtors civil damages of $55,000.00 under Texas Property Code §202.004(c) and attorney's fees in the amount of $40,400.00, plus court costs and contingent appellate fees.[18]

21.     The Debtors appealed, but did not supersede, the Initial State Court Judgment.

22.     For years prior to the entry of the Initial State Court Judgment, Debtor Robert Webb had been self-employed as a residential air conditioning contractor licensed by the State of Texas, doing business under a sole proprietorship known as Central Heating and Air Conditioning.[19]

23.     Immediately after the entry of the Initial State Court Judgment in 2007, an entity known as Central Heating and Air Conditioning, Inc. ("CHA, Inc.") was incorporated by Robert Webb's mother, Judith Webb.

24.     Judith Webb has always been the sole stockholder of CHA, Inc.

25.     During the existence of CHA, Inc., the Debtors have each served as an officer and have been authorized signatories on the bank account(s) of CHA, Inc., but neither has ever owned an ownership interest in that entity.

26.     Beginning in mid-2007, Robert Webb, as an officer of CHA, Inc., began procuring new residential HVAC contracts in the name of CHA, Inc. and thereafter provided licensed services to the public through CHA, Inc., ostensibly as an independent contractor.

27.     In lieu of a direct salary to Robert Webb for the services rendered to the corporation, the Debtors, with the permission of the sole stockholder, began to pay personal expenses from funds contained in the bank account of CHA, Inc. and with a corporate credit card of CHA, Inc.[20]

28.     At the end of each tax year, Robert Webb is issued a Form 1099-MISC by CHA, Inc. for tax accounting purposes based upon the amount of CHA, Inc. funds

---

[18]  *Id.*

[19]  Ex. 26(c) at p. 6.

[20]  Stipulated Fact #31.

tendered for the personal expenses of Robert Webb in that particular year.

29.  The foregoing practice by and between CHA, Inc. and Robert Webb continues to the present date.

30.  As the Debtors' appeal of the Initial State Court Judgment was progressing in 2007, Glenbrook brought a motion for contempt against them in the State Court Litigation for the Debtors' alleged failure to abide by various portions of the injunctive relief granted in the Initial State Court Judgment.[21]

31.  On November 15, 2007, the state district court issued an order finding the Debtors in contempt of the injunctive relief imposed by the Initial State Court Judgment based upon their failure to remove the outbuilding or to reset the surveillance cameras as ordered in the Initial State Court Judgment.[22]

32.  On that same date, the Debtors removed the outbuilding.[23]

33.  On January 14, 2008, the Debtors filed a joint petition for relief under Chapter 13 of the Bankruptcy Code in this Court under case no. 08-40066.

34.  On February 11, 2008, the Debtors filed their Schedule B and their Statement of Financial Affairs, which disclosed to all parties-in-interest, including Glenbrook as a judgment creditor:  (1) the creation of CHA, Inc.; (2) the status of the Debtors as officers of that entity; and (3) the entity's succession to the air conditioning business formerly conducted as a sole proprietorship.[24]

35.  Glenbrook actively participated in the 2008 bankruptcy case.

36.  Upon the Debtors' second failure to confirm a Chapter 13 plan, the Debtors' 2008 bankruptcy case was dismissed with prejudice to re-filing for 120 days on September 12, 2008.

---

[21] Ex. 23.

[22] Ex. 24.  The contempt order assessed attorney's fees against the Debtors in the amount of $1,500.00 and denied all other relief.  However, the $1,500 attorney's fee award was not encompassed within the scope of the Plaintiff's amended complaint in this adversary proceeding.

[23] Stipulated Fact #13.

[24] Ex. 26(a), question #18 at p. 8; Ex. 26(b), question 13 at p. 4.

37.     A year later, on October 1, 2009, a substantial portion of the relief granted by Initial State Court Judgment was reversed and remanded by the Court of Appeals, Fifth District of Texas at Dallas.[25]

38.     The Court of Appeals reversed and remanded the $55,000 statutory damage award in favor of Glenbrook based upon the construction of the shed as being contrary to the pleadings.

39.     The appellate decision also reversed and remanded the attorney's fee award in favor of Glenbrook.

40.     The jury findings regarding the acts of the Debtors constituting nuisances were not disturbed on appeal.[26]

41.     As for the injunctive relief granted by the Initial State Court Judgment, two injunctions were affirmed, three injunctions were dissolved, and six injunctions were reversed and remanded to the trial court for further consideration.

42.     The injunctions forbidding the yelling of obscenities by the Debtors within the neighborhood and the playing of excessively loud music outdoors by the Debtors were affirmed by the Court of Appeals.

43.     The injunctions forbidding the disposition of dead rodents and animal feces by the Debtors, as well as restrictions on the driving of vehicles by the Debtors, were reversed and dissolved by the Court of Appeals.

44.     The injunctions forbidding construction by the Debtors without the Plaintiff's approval, addressing Debtors' yelling of obscenities outside the neighborhood, restricting the taking of photographs or the use of surveillance cameras by the Debtors, and prohibiting the Debtors from playing "obscene" music were all reversed and remanded for further consideration.

45.     In June 2010, after the entry of the appellate mandate but before any subsequent decision on remand by the trial court, the Debtors moved from the Glenbrook Circle property and subsequently conveyed the Glenbrook Circle home to RKW

---

[25] Stipulated Fact #17 and Ex. 7. Alternatively, *see Webb v. Glenbrook Owners' Assoc., Inc.*, 298 S.W.3d 374 (Tex. App. – Dallas 2009, no pet.). The judgment was affirmed in some limited respects. *See infra* finding #42.

[26] Stipulated Fact #18.

Family Farm, L.P. ("RKW, L.P.").[27]

46.    Each of the Debtors own a 49.5% limited partnership interest in RKW, L.P.  CHA, Inc. acts as the general partner of RKW, L.P. with a 1% ownership interest.[28]

47.    RKW, L.P. subsequently leased the Glenbrook Circle property to third-party tenants for approximately $2,500 to $2,700 per month.[29]

48.    RKW, L.P. has never possessed a bank account.

49.    The monthly proceeds received by RKW, L.P. from the rental of the Glenbrook Circle property were routinely deposited into the bank account of CHA, Inc., its general partner.

50.    Upon remand of the State Court Litigation, the parties submitted stipulations of fact to the 219th Judicial District Court to resolve the State Court Litigation.[30]

51.    Upon consideration of the parties' stipulations and the opinion and mandate of the Court of Appeals, the 219th Judicial District Court issued an amended "Final Judgment and Permanent Injunctions" (the "Amended Final Judgment") on September 29, 2011.[31]

52.    In the Amended Final Judgment, Glenbrook was awarded civil damages pursuant to Texas Property Code §202.004(c) against both Debtors, jointly and severally, in the amount of $74,046.00.

53.    The Amended Final Judgment narrowed the scope of the prohibited behavior precluded by the permanent injunctions on the various remanded topics.[32]

---

[27] Stipulated Fact #20.  This transfer was subsequently disclosed in the Debtors' original Statement of Financial Affairs.  Ex. 25(a), question #10 at p. 49.

[28] Stipulated Fact #24.  See also Ex. 27 at 51:7-9.

[29] Stipulated Facts #20 and #30.

[30] Ex. 5.

[31] Ex. 22.

[32]  It also reaffirmed the injunctive relief which had been affirmed by the Court of Appeals.

54.   The Amended Final Judgment further awarded Glenbrook attorney's fees in the amount of $189,612.92 as against both Defendants, jointly and severally, plus pre-judgment and post-judgment interest, together with contingent awards of appellate attorney's fees.

55.   Just over four months later, the Debtors filed a joint voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court on February 10, 2012 under case no. 12-40350.

56.   Unlike their schedules in their earlier Chapter 13 case, the Debtors in this case failed on two occasions to schedule specifically their limited partnership interests in RKW, L.P. on Schedule B.[33]  This omission was remedied in a second amended Schedule B filed on September 7, 2012.[34]

57.   However, the original Statement of Financial Affairs filed in the case referenced the transfer of the Glenbrook Circle property by the Debtors to RKW, L.P. in June 2010.[35]

58.   The original Statement of Financial Affairs also referenced the foreclosure upon the Glenbrook Circle property by American Servicing Co. on February 7, 2012.[36]

59.   The Debtors also failed to disclose in their original schedules in this case that they served as officers in CHA, Inc.[37]  That omission was remedied by an amended Schedule B filed on April 9, 2012.[38]

60.   Notwithstanding the original failure of the Debtors to list themselves as officers of CHA, Inc., Glenbrook had actual knowledge of that fact prior to the bankruptcy case as a result of the 2008 bankruptcy filing.

---

[33]  Ex. 25(a) and 25(c).

[34]  Ex. 25(d).

[35]  Ex. 25(a), question #10 at p. 49.

[36]  *Id*., question #5 at p. 48.

[37]  *Id*., question #18 at p. 50.

[38]  Ex. 25(c).

61.   The Debtors testified without contradiction at trial that their relationship to, and activities with, RKW, L.P. and CHA, Inc. was discussed at length at the §341 meeting of creditors, including their use of CHA, Inc. funds for the satisfaction of their personal liabilities and the resulting recognition of realized income by the Debtors for personal tax purposes as a result of those expenditures.[39]

62.   There is no evidence in the record that the Trustee was dissatisfied with the level of disclosure or cooperation from the Debtors in this case, particularly with regard to the actions of, or the Debtors' interactions with, RKW, L.P. and CHA, Inc.

63.   There is insufficient evidence in the record to support a conclusion that the omissions in the schedules occurred in order to conceal information from the Trustee or to preclude the Trustee from taking any appropriate action against RKW, L.P. or CHA, Inc.

64.   The Trustee took no legal action by which the assets of RKW, L.P. were recognized as the assets of the Debtors or were recovered as assets of the Debtors' bankruptcy estate.

65.   The Trustee took no legal action by which the assets of CHA, Inc. were recognized as the assets of the Debtors or were recovered as assets of the Debtors' bankruptcy estate.

66.   The integrity of RKW, L.P. and CHA, Inc. as independent legal entities has not been legally or equitably compromised.

67.   The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Debtors transferred, removed or concealed any property actually owned by them within one year before the filing of their bankruptcy petition.

68.   The Plaintiff has failed to demonstrate by a preponderance of the evidence that, through the omissions from their schedules, the Debtors concealed their limited partnership interests in RKW, L.P. with an actual intent to hinder, delay, or defraud creditors.

---

[39] Only limited written excerpts from the Debtors' testimony at the §341 meeting were admitted at trial. Those limited excerpts, however, corroborate the Debtors' trial testimony that information was provided and that the Trustee and Glenbrook's attorney each asked questions at that meeting regarding RKW, L.P., CHA, Inc., and the Debtors' involvement with those entities. See Ex. 27 at pp. 1-12.

69.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that, through the omissions from their schedules, the Debtors concealed their officer capacities with CHA, Inc. with an actual intent to hinder, delay or defraud creditors.

70.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Debtors concealed and otherwise failed to account to the Estate for rental proceeds *owned by the Debtors* arising from the rental of the Glenbrook Circle property.

71.     RKW, L.P. received rental income from its second and final third-party tenant, Kirk Massey, for only a 4- or 5-month period within the year prior to the filing of the Debtors' bankruptcy case.  Such income ended in May or June, 2011.[40]

72.     Such rental income was owned by RKW, L.P. and was deposited into the bank account of CHA, Inc., the general partner of RKW, L.P.

73.     To the degree that the funds contained within the CHA, Inc. bank account were improperly commingled, they were improperly commingled with RKW, L.P. assets – not the assets of the individual Debtors.

74.     No legal basis has been demonstrated upon which the Debtors were required to list the assets of RKW, L.P. and CHA, Inc. in their personal bankruptcy schedules

75.     To the degree that the Debtors utilized CHA, Inc. funds to pay personal expenses during the year prior to the filing of their bankruptcy petition, such amounts were properly aggregated in their original Statement of Financial Affairs as received income for the particular calendar year.[41]

76.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that, through the omissions from their schedules, the Debtors made a false statement with an actual fraudulent intent.

77.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that, through the omissions from their schedules, the Debtors made a false statement that materially related to the bankruptcy case.

---

[40]   See Robert Webb deposition at 75:15 - 76:8 contained in Ex. 27 at p. 28.

[41]   Ex. 25(a), question #1 at p. 46.

78.   Though the Debtors and their counsel clearly should have been more diligent in reviewing the content of their schedules, the isolated errors contained therein regarding the Debtors' capacities as CHA, Inc. officers and the omission of the limited partnership interests in RKW, L.P. caused minimal impact upon the bankruptcy estate, particularly in light of the acute inquiries by the Plaintiff's counsel and the Trustee at the §341 meeting.

79.   The isolated errors contained in the schedules did not jeopardize efficient case administration nor did they reflect a reckless indifference to the truth by the Debtors.

80.   The errors contained in the Debtors' schedules do not warrant the invocation of the drastic penalty inflicted by a denial of the Debtors' discharge.

81.   As for the §523(a)(6) claim, the particular debt owed by the Debtors to the Plaintiff was established by the Amended Final Judgment issued by the 219th Judicial District Court in the State Court Litigation.

82.   Despite the Plaintiff's efforts to characterize the award of the judgment amount as having been based upon the totality of the Debtors' behavior throughout this dispute,[42] the action upon which the judgment debt was actually assessed was dramatically narrower in scope.

83.   The judgment amount was based strictly upon the trial court's finding of a violation of the restrictive covenants contained in the Declaration of Covenants and Assessments for Glenbrook Estates.

84.   The Amended Final Judgment awarded the Plaintiff civil damages of $74,046.00 based upon Texas Property Code §202.004(c).

85.   There is no finding of actual harm by the 219th Judicial District Court based upon the actions of the Debtors that undergirds the award of civil damages to the Plaintiff under §202.004(c) [or the associated award of attorney's fees] in the Amended Final Judgment.

86.   Even assuming the existence of an actual injury, the judgment debt arose from acts committed by the Debtors which led to an injury sustained by the Plaintiff.

---

[42]   For example, the Plaintiff's references to the nuisance-type behaviors which were adjudicated in the State Court Litigation.  Though such characterizations remained undisturbed upon appeal, it was not the basis upon which the monetary damages were assessed by the state court.

87.     The testimony of various Glenbrook residents regarding the Debtors' subjective intent of injuring the Association was not credible.

88.     Any particular violation of the restrictive covenants imposed by the Declaration of Covenants and Assessments for Glenbrook Estates were not substantially certain to cause harm to the Plaintiff.  Indeed, certain violations of the restrictive covenants had been intentionally ignored by Glenbrook in the past.

89.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that, with regard to the actions which led to the creation of the judgment debt imposed by the Amended Final Judgment, the Debtors acted with the specific subjective intent to cause injury to the Glenbrook Owners' Association, Inc.

90.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that, with regard to the actions which led to the creation of the judgment debt imposed by the Amended Final Judgment, the actions of the Debtors created an objective substantial certainty of harm to the Glenbrook Owners' Association, Inc.

91.     To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## *CONCLUSIONS OF LAW*

1.     The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§1334 and §157.

2.     This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3.     The Bankruptcy Code requires that a debtor be granted a discharge unless one of the statutory grounds for denial of that discharge is proven.  11 U.S.C. §727(a).

4.     The denial of a debtor's discharge is considered an extreme remedy.  *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 845 (Bankr. N.D. Tex. 2003) (citing *Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993)).

5.     "Courts should deny discharge only for very specific and serious infractions." *Martin Marietta Matl's Southwest, Inc. v. Lee (In re Lee)*, 309 B.R. 468, 476

(Bankr. W.D. Tex. 2004) (citing *Ichinose v. Homer Nat'l Bank (In re Ichinose),* 946 F.2d 1169, 1172 (5th Cir. 1991)).

6.      A denial of discharge is to be imposed only upon those debtors who have not been honest and forthcoming about their affairs and therefore have not fulfilled the duties of full disclosure required of a bankruptcy debtor.  *Buckeye Retirement Properties v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006) ["The denial of a debtor's discharge is akin to financial capital punishment. It is reserved for the most egregious misconduct by a debtor."].  Speculation and surmise about such activities are insufficient.  Probative evidence must be presented.

7.      To fulfill the statutory policy of providing a debtor with a "fresh start," the provisions of §727(a) are construed strictly against parties seeking to deny the granting of a debtor's discharge and liberally in favor of a debtor.  *Laughlin v. Nouveau Body & Tan, L.L.C. (In re Laughlin)*, 602 F.3d 417, 421 (5th Cir. 2010); *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 356 (Bankr. N.D. Tex. 2010).

8.      The same construction principles favoring a debtor are imposed in an action to determine the dischargeability of a particular debt.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc. (In re Hudson),* 107 F.3d 355, 356 (5th Cir. 1997)).

9.      The Plaintiff bears the burden of proving that the Debtors are not entitled to a discharge under §727.  The standard of proof for its claim is a preponderance of the evidence.  *Cadle Co. v. Duncan (In re Duncan),* 562 F.3d 688, 695 (5th Cir. 2009); *Beaubouef v. Beaubouef (In re Beaubouef),* 966 F.2d 174, 178 (5th Cir. 1992).

10.     A preponderance of the evidence standard also applies to the determination of the dischargeability of a particular debt.  *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

11.     The fact that there is a debt owing by the Defendant to the Plaintiff is established through the factual findings and judgment issued in the State Court Litigation. However, this Court retains exclusive jurisdiction to determine whether that debt is dischargeable.  *Grogan,* 498 U.S. at 284, n.11; *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997).

*§727(a)(2)(A): Transfer or Concealment of Property.*

12.     Section 727(a)(2)(A) provides:

   The court shall grant the debtor a discharge unless —

> the debtor, with intent to hinder, delay, or defraud a creditor
> or an officer of the estate . . . has transferred, removed,
> destroyed, mutilated, or concealed, or has permitted to be
> transferred, removed, destroyed, mutilated, or concealed —
>
>> property of the debtor, within one year before
>> the date of the filing of the petition. . . ."

13.     In order to establish grounds for denial of a discharge under §727(a)(2)(A), the
        Plaintiff must demonstrate by a preponderance of the evidence that there was:
        (1) a transfer or concealment of property;
        (2) belonging to the debtor;
        (3) within one year of the filing of the petition; and
        (4) performed with an intent to hinder, delay or defraud a creditor or an officer of
            the estate.
        *See, e.g., Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

14.     It is widely recognized that a plaintiff must demonstrate . . . an actual intent to
        hinder, delay, or defraud creditors to prevail on a §727(a)(2) claim — a
        constructive intent is insufficient.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404
        B.R. 366, 384 (Bankr. E.D. Tex. 2009) *(citing Chastant, 873 F.2d at 91)*.

15.     However, "[c]ourts are reluctant to accept a debtor's self-serving statement of her
        intent as the best evidence of that intent."  *Fiala v. Lindemann (In re Lindemann)*,
        375 B.R. 450, 466 (Bankr. N.D. Ill. 2007).

16.     Thus, the existence of actual fraud "may be inferred from the actions of the debtor
        and may be proven by circumstantial evidence."  *Herman v. Jackson (In re
        Herman)*, 396 F. App'x 108, 110 (5th Cir. 2010) (citing *Chastant*, 873 F.2d at 91);
        *Lowry v. Croft (In re Croft)*, 500 B.R. 823, 852 (Bankr. W.D. Tex. 2013).

17.     Because the Plaintiff has failed to sustain its burden of proof to show by a
        preponderance of the evidence that the Debtors transferred, removed or concealed
        any individually-owned property within a year of their bankruptcy filing with an
        actual intent to hinder, delay or defraud creditors, the relief sought by the Plaintiff
        under §727(a)(2)(A) must be denied.

-15-

*§727(a)(4)(A): False Oaths.*

18.    Section 727(a)(4)(A) provides:

The court shall grant the debtor a discharge unless —

(4) the debtor knowingly and fraudulently, in or in connection with the
   case—
   (A) made a false oath or account . . . .

19.    "The purpose of §727(a)(4)(A) is to enforce a debtor's duty of disclosure and to
ensure that the Debtor provides reliable information to those who have an interest
in the administration of the estate.  Thus, complete financial disclosure is a
condition precedent to the privilege of discharge." *Fiala v. Lindemann (In re
Lindemann)*, 375 B.R. 450, 469 (Bankr. N.D. Ill. 2007) (citations and quotations
omitted).

20.    However, not every misstatement or omission in the schedules constitutes a false
oath. *See, e.g., Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561 (5th Cir. 2005).

21.    Indeed, even multiple errors do not mandate the finding of a false oath without
sufficient evidence of a fraudulent intent.  *Id.*

22.    As the objecting party, the Plaintiff carries the burden of proof under §727(a)(4)
(A) and must demonstrate by a preponderance of evidence that: (1) the debtor
made a statement under oath; (2) the statement was false; (3) the debtor knew the
statement was false; (4) the debtor made the statement with fraudulent intent; and
(5) the statement materially related to the bankruptcy case.  *Duncan,* 562 F.3d at
695; *Beaubouef,* 966 F.2d at 178.

23.    If a plaintiff establishes a *prima facie* case that a debtor made a materially false
statement, then the burden shifts to the debtor to present evidence that he or she is
innocent of the charged offense.  *Id.*

24.    A plaintiff in a §727(a)(4)(A) action must demonstrate by a preponderance of the
evidence an actual intent to hinder, delay, or defraud creditors — a constructive
intent is insufficient.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. at 384.

25.    In most circumstances only the debtor can testify directly concerning his or her
intent and "rare will be the debtor who willingly provides direct evidence of a
fraudulent intent." *Neary v. Darby (In re Darby)*, 376 B.R. 534, 541 (Bankr. E.D.

**-16-**

Tex. 2007).  Instead, the existence of a fraudulent intent is most often betrayed by an examination of a course of conduct.  *Id.; see also First Tex. Savings Assoc. v. Reed (In re Reed)*, 700 F.2d 986, 991 (5th Cir. 1989).

26.   Thus, "[f]raudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 504 (Bankr. N.D. Tex. 2006); *see also*, *Sholdra v. Chilmark Fin., LLP (In re Sholdra)*, 249 F.3d 380, 382-83 (5th Cir. 2001).

27.   A false statement or omission is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 692 (Bankr. E.D. Tex. 2009) (*citing Duncan*, 562 F.3d at 695).[43]

28.   Because the Plaintiff has failed to sustain its burden of proof to show by a preponderance of the evidence that the errors in the Debtors' schedules were made with a fraudulent intent, and were material to the administration of the estate, the relief sought by the Plaintiff under §727(a)(4)(A) must be denied.

*Nondischargeability Under §523(a)(6):  Debt Arising from Willful and Malicious Injury*

29.   The Plaintiff further contends that the debt imposed by the Amended Final Judgment should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon it by the Debtors.

30.   Section 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

---

[43]   However, a finding of materiality is admittedly not dependent solely upon the value of the omitted assets or whether the omission was detrimental to creditors. *Pratt*, 411 F.3d at 566.

31.    In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under §523(a)(6).

32.    The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

33.    As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either:
>      (1) an objective substantial certainty of harm or
>      (2) a subjective motive to cause harm.

*Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

34.    The "objective substantial certainty" prong "is a recognition of the evidentiary reality that defendants rarely admit malicious intent.  A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009), *citing In re Vollbracht*, 276 Fed. App'x. 360 (5th Cir. 2007).

35.    Section 202.004(c) of the Texas Property Code provides that:

> A court may assess civil damages for the violation of a restrictive covenant in an amount not to exceed $200 for each day of the violation.

9 TEX. PROP. CODE §202.004(c) (West 2014).

36.    Restrictive covenants are subject to the general rules of contract construction. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 66 (Tex. App. – Houston [14th Dist.] 2014, pet. filed ) (citing *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)).

37.     However, a party need not prove a breach of contract in order to be awarded civil damages under §202.004(c).  In fact, no proof of harm is required at all.

38.     "Damages assessed under section 202.004 of the Property Code are unrelated to the type or extent of injury or harm caused by the violation.  As a result, section 202.004 damages are punitive rather than compensatory."  *Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 436 (Tex. App. – Houston [14th Dist.] 2012, no pet.) [upholding trial court's discretionary refusal to assess civil damages].

39.     As the Court of Appeals,  Fourteenth District of Texas at Dallas stated in an earlier opinion:

> [T]he amount of damages that may be assessed under section 202.004(c) is not related to the showing of any type of injury or harm or the extent of such injury or harm; rather, it is related to the number of days that the violation takes place, without any reference to the nature, extent, or existence of any type of injury or harm.  Nothing in section 202.004 indicates that the "damages" that the trial court may "assess" under subsection (c) are intended to be compensation for any actual harm or injury from the violation of the restrictive covenants. . . . Because there is no relation between the statutory damages that may be assessed under 202.004(c) and any actual harm or injury from the violation, a trial does not abuse its discretion in assessing damages under section 202.004(c) in the absence of evidence of actual damages.

*Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 937 (Tex. App. – Houston [14th Dist.] 2010, no pet.).

40.     It is legally insufficient for the purposes of §523(a)(6) for the Plaintiff to demonstrate that the Debtors took intentional actions which resulted in an injury to the Plaintiff.

41.     The Plaintiff has failed to demonstrate by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon it by the Debtors.

42.     The Plaintiff has failed to demonstrate by a preponderance of the evidence that the Defendants' actions in breaching the restrictive covenants set forth in the Glenbrook Declaration created an objective substantial certainty of harm to Glenbrook.

43.   Thus, the Plaintiff has failed to sustain its burden of proof that any portion of the indebtedness owed to it by the Debtors arose from the infliction of a "willful and malicious injury" as contemplated by §523(a)(6).


## CONCLUSION

44.   Because the Court concludes that the Plaintiff, Glenbrook Owners' Association, Inc., has failed to prove by a preponderance of the evidence that the Debtor-Defendants, Robert Lee Webb, Jr. and Katheryn C. Webb, transferred, removed or concealed any individually-owned property within a year of their bankruptcy filing with an actual intent to hinder, delay or defraud creditors, the relief sought by the Plaintiff under §727(a)(2)(A) must be denied.

45.   Because the Court concludes that the Plaintiff, Glenbrook Owners' Association, Inc., has failed to prove by a preponderance of the evidence that any omission from the bankruptcy schedules and statements filed by the Debtor-Defendants, Robert Lee Webb, Jr. and Katheryn C. Webb, constituted a false statement that was material to the bankruptcy case and was made with an intent to hinder, delay or defraud creditors, the relief sought by the Plaintiff under §727(a)(4)(A) must be denied.

46.   Because the relief requested by the Plaintiff's Amended Complaint under the provisions of §727 must be denied, a discharge order shall accordingly be entered in bankruptcy case 12-40350 in favor of the Debtor-Defendants, Robert Lee Webb, Jr. and Katheryn C. Webb, pursuant to 11 U.S.C. §727(a).

47.   Because the Court concludes that the Plaintiff, Glenbrook Owners' Association, Inc., has failed to prove by a preponderance of the evidence that the asserted debt imposed by the Amended Final Judgment arose from a willful and malicious injury inflicted upon it by the Debtor-Defendants, Robert Lee Webb, Jr. and Katheryn C. Webb, judgment must be rendered for the Defendants under §523(a)(6).

48.   Thus, all relief requested in the Plaintiff's Amended Complaint in the above-referenced adversary proceeding shall be denied.

49.     As a final note, the Court acknowledges that this has been a long and bitter legal battle between Glenbrook and the Debtors that has occurred on a number of fronts.

50.     The Debtors' behavior at many junctures of this dispute can be fairly characterized as childish, churlish, petulant, and even vile.  The frustration and stress experienced in former years by many residents of the Glenbrook community as a result of their interactions with the Debtors is palpable and justifiable.

51.     However, notwithstanding any empathy which the Court might have for those who have endured the Debtors' opprobrious behavior, such sentiment cannot supplant the required degree of proper proof necessary to obtain the relief requested, particularly in light of the Bankruptcy Code's directive that efforts to deny the entry of a discharge order or to except a particular debt from the scope of any such discharge order must be strictly construed against a creditor and liberally construed in favor of a debtor.

52.     To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

53.     An appropriate judgment shall be entered consistent with these findings and conclusions.


                                    Signed on 11/25/2014


                                    THE HONORABLE BILL PARKER
                                    UNITED STATES BANKRUPTCY JUDGE

NOT

FOR

PUBLICATION

**-21-**